Plaza Realty Company v. Commissioner.
Plaza Realty Co. v. Commissioner
Docket No. 1094.
United States Tax Court
1943 Tax Ct. Memo LEXIS 114; 2 T.C.M. (CCH) 801; T.C.M. (RIA) 43427; September 18, 1943
*114 William P. Smith, Esq., Metropolitan Bank Bldg., Washington, D.C., for the petitioner. Philip A. Bayer, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of deficiencies in personal holding company surtax and 25 percent penalties for the calendar years 1937 to 1940 as follows: Year
Deficiency
Penalty
1937
$ 5,738.76
$1,434.69
1938
6,598.65
1,649.66
1939
6,546.98
1,636.75
1940
6,822.65
1,705.66
Total
$25,707.04
$6,426.76
The petitioner concedes that it is a personal holding company for the years involved. The questions in issue are whether petitioner's income is personal holding company income for the years involved and whether the 25 percent penalty for delinquency for failure to file returns is legally due. Findings of Fact The petitioner is a corporation organized under the laws of the State of West Virginia in 1912, at which time it constructed in the City of Charleston, W. Va., a building known as the "Capitol Theatre." It filed its income tax returns for the taxable years in question with the collector for West Virginia. During all times pertinent herein the petitioner's *115 business has consisted of the ownership and renting of the Capitol Theatre. The capital stock of petitioner consists of 1,000 shares of a par value of $100 each. During the taxable years and for many years prior thereto the shares of capital stock were owned by five individuals and in the following amounts, to-wit: C.A. Midelburg, 333 1/3 shares; Ferd Midelburg, brother of C. A. Midelburg, 333 1/3 shares; A. B. Hyman, no relation to either C.A. or Ferd Midelburg, 111 1/3 shares; Erma Hyman, sister of A. B. Hyman, 111 shares; and Ricca Hyman, sister of A. B. Hyman, 111 shares. The Capitol Theatre building and its contents were destroyed by fire in 1923, and petitioner proceeded forthwith to rebuild it, completing the same in the fall of 1924. The Capitol Amusement Co., a separate corporation, was organized in 1924 to take over the operation of the "Capitol," "Virginian," and the "Rialto" theatres in Charleston. This deal, however, fell through due to a failure to secure the ratification of the stockholders of the corporation owning the two latter theatres, although the terms of the lease had been fully agreed upon and an instrument of lease had been signed by representatives of *116 the corporations involved. The Capitol Amusement Co. thereupon entered into the operation of the Capitol Theatre and was actively engaged in such operation during the taxable years involved in this proceeding as it was licensed to do in the City of Charleston, County of Kanawha, State of West Virginia. The Capitol Amusement Co. entered into contracts for the showing of films in the Capitol Theatre, paid the machine operators, ushers and ticket sellers, and was the only party engaged in the operation of the theatre during the taxable years. The capital stock of the Capitol Amusement Co. consists of 50 shares of a par value of $100 per share. During all times pertinent herein and long prior thereto these shares of stock were owned by the same five individuals who owned the stock of petitioner and was owned in the following amounts, to-wit: C. A. Midelburg, 16 2/3 shares; Ferd Midelburg, 16 2/3 shares; A. B. Hyman 5 5/9 shares; Erma Hyman, 5 5/9 shares; and Ricca Hyman 5 5/9 shares. Upon the rebuilding of the Capitol Theatre in 1924 the theatre was without necessary equipment. The stockholders formed a partnership under the name and style of Midelburg Bros. & Hyman, which purchased the *117 necessary equipment. The five members of the partnership had the same interest in the partnership as they had in the capital stock of the petitioner. The only books of account kept for the petitioner, Capitol Amusement Co., and the partnership are the partnership books of account. The partnership receives all the monies collected by the Capitol Amusement Co. and deposits them in its own bank account. Under the arrangement the Capitol Amusement Co. pays rental of $31,200 per year for the use of the Capitol Theatre and the equipment. Of this amount $13,200 is shown as the income of the partnership as rent for the equipment of the theatre and $18,000 as the income of the petitioner. That amount of rent has been credited to the account of the petitioner for each year since 1930; in addition thereto the petitioner receives the rent of two stores in the theatre building. The partnership keeps a running account with the petitioner. Out of the $18,000 and other income which accrues to the petitioner each year the partnership pays all of the expenses of the petitioner, including interest upon its bonds, some of which have been retired out of the income received. A certified public accountant *118 audits the books of account of the partnership and prepares its income tax returns and those of the petitioner and of the Capitol Amusement Co. Petitioner's income tax returns for the years 1937 to 1940 show the following income and deductions: Gross Income:
1937
1938
1939
1940
Rents
$19,900.00
$20,375.00
$20,200.00
$20,300.00
Total Income
$19,900.00
$20,375.00
$20,200.00
$20,300.00
Deductions: Repairs
$ 289.17
$ 49.22
Interest
$ 2,500.00
2,502.29
2,500.00
$ 2,500.00
Taxes
1,949.96
2,161.85
2,265.21
2,344.47
Depreciation
3,878.44
3,878.44
3,878.44
3,878.44
Other deductions
1,386.89
1,089.91
1,133.91
1,452.48
Total deductions
$ 9,715.29
$ 9,921.66
$ 9,826.78
$10,175.39
Net Income
$10,184.71
$10,453.34
$10,373.22
$10,124.61
The income tax returns of the Capitol Amusement Co. for the same years show the following income and deductions: Gross Income:
1937
1938
1939
1940
Rents
$ 31,200.00
$31,200.00
$31,200.00
$31,200.00
Sale of asset
30.00
Total Income
$31,200.00
$31,200.00
$31,200.00
$31,230.00
Deductions:
1937
1938
1939
1940
Rent on business property
$18,000.00
$18,000.00
$18,000.00
$18,000.00
Repairs
496.00
Taxes
539.35
77.05
Depreciation
2,976.24
3,625.00
2,781.85
2,734.76
Other deductions
75.00
88.51
382.67
65.00
Total deductions
$22,086.59
$21,790.56
$21,164.52
$20,799.76
Net Income
$ 9,113.41
$ 9,624.69
$10,035.48
$10,430.24
*119 None of the petitioner's stockholders had the use, or was entitled to the use, by lease, sublease, or other arrangement, of the Capitol Theatre for which it received rents constituting its entire income for the taxable years. Opinion At the taking of the testimony of witnesses in this proceeding counsel for the petitioner and for the respondent stipulated that in so far as concern the percentage of stock ownership requirement of section 502 (f) I.R.C. any one of the five individual stockholders of petitioner corporation may be considered as owning directly or indirectly more than 25 percent in value of the outstanding stock of the petitioner; also that unless the Tax Court shall find that petitioner's income constitutes personal holding company income within the terms of section 502 (f) I.R.C. there is no tax deficiency due. The petitioner reserved the right, however, in any event to contest its liability for delinquency in filing personal holding company surtax returns. Section 403 of the Revenue Act of 1938 provides in part as follows: SEC. 403. PERSONAL HOLDING COMPANY INCOME. For the purpose of this title the term "personal holding company income" means the portion of the *120 gross income which consists of: (a) Dividends, interest (other than interest constituting rent as defined in subsection (g)), royalties (other than mineral, oil, or gas royalties), annuities. * * * * *
(f) Use of Corporation Property by Shareholder. - Amounts received as compensation (however designated and from whomsoever received) for the use of, or right to use, property of the corporation in any case where, at any time during the taxable year, 25 per centum or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for an individual entitled to the use of the property; whether such right is obtained directly from the corporation or by means of a sublease or other arrangement. Section 403 (f) of the Revenue Act of 1938 is the same as section 352 (f) of the Revenue Act of 1936, added by section 1 of the Revenue Act of 1937, and as section 502 (f) I.R.C. This provision of law was explained in the Ways and Means Committee Report on the Revenue Act of 1937 (75th Congress, 1st Sess., H. Rept. 1546; 1939-1 C.B. (P.T. 2) 707) as follows: Subsection (f) includes in personal holding company income, amounts received *121 as compensation for the use of, or the right to use, the property of the corporation. However, this rule only applies where during the taxable year of the corporation 25 per cent or more in value of its outstanding stock is owned, directly or indirectly, by an individual leasing or otherwise entitled to the use of the property. It makes no difference whether the right to use the property is obtained by the individual directly from the corporation or by means of a sublease or other arrangement. Since under existing law. this type of compensation is not now included for the purpose of determining whether the corporation meets the 80 per cent test, the taxpayer may fix such compensation in an amount sufficient to bring its other investment income below the 80 per cent test. It has been shown to the committee that this device has been employed by taxpayers who had incorporated their yachts, city residences, or country houses and had paid sufficient rent to give the corporations enough income from their service to take them out of present section 351. By including this type of income in the definition of personal holding company income, your committee removes this method of tax avoidance. *122 The following paragraph of the above referred to Committee Report provides in part: Subsection (g) includes as personal holding company income, rents which do not constitute 50 per cent or more of the gross income. For this purpose, rents are defined as compensation, however, designated, for the use of, or right to use, property. But rents do not include compensation received for the use of property covered by subsection (f) (rent of yachts, airplanes, etc., to shareholders). * * * It is the contention of the respondent herein that the petitioner leased the Capitol Theatre to the partnership of Midelburg Bros. & Hyman, which in turn rented it to the Capital Amusement Co. He points to the fact that on its returns the partnership states its business as "Leases Theatre & Equipt.", and argues that this supports his contention. He also argues that his contention is confirmed by the fact that the only books of account of the petitioner, the Capitol Amusement Co., and of the partnership are the books of the partnership. He also relies upon the decision of the Board of Tax Appeals, now The Tax Court of the United States, in Furniture Finance Corporation, 46 B.T.A. 240. *123 The facts in that case were that two individuals equally owned all the shares of stock of a corporation which owned a building which was used by a partnership composed of the two stockholders. It was held that the individual stockholders had the use of the building within the meaning of section 352 (f) of the Revenue Act of 1936, added by section 1 of the Revenue Act of 1937. We think it clear from the legislative history of section 502 (f) I.R.C. that it was intended to bring into personal holding company income the income of corporations which owned property which was used by the individual stockholder or stockholders. The crucial question here is whether the stockholders of the petitioner had the use of, or the right to use, the Capitol Theatre. The evidence in this case is that the petitioner did not use, or have the right to use, the Capitol Theatre. It was the intention of all parties concerned that it should be occupied by the Capitol Amusement Co. and that the Capitol Amusement Co. should pay a rental of $18,000 per year for it. We can not see that it is material that the petitioner did not keep books of account for itself. Those were all kept by the partnership. The evidence *124 is clear that the petitioner received the rent through the agency of the partnership. The determination of the respondent is reversed. Since we have held that the income of the petitioner was not personal holding company income for the years involved, it had no personal holding company liability for those years and was not required to file personal holding company tax returns. Decision of no deficiencies will be entered.